# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT COURT OF PUERTO RICO

| | |
|---|---|
| DANIEL J. KOPEL BALLESTER<br><br>    Plaintiffs<br><br>    vs<br><br>DR. PEDRO J. COLON HERNANDEZ, his wife JANE DOE and the CONJUGAL PARTNERSHIP constituted between them; DR. ELIZARDO MATOS CRUZ, his wife JANE ROE and the CONJUGAL PARTNERSHIP constituted between them; HOSPITAL GENERAL MENONITA, INC. d/b/a HOSPITAL MENONITA DE CAYEY; PUERTO RICO MEDICAL DEFENSE INSURANCE COMPANY; XYZ INSURANCE COMPANIES; JOHN DOE AND RICHARD ROE; XYZ ENTITIES; XYZ COMPANIES<br><br>    Defendants | CIVIL NO.<br><br>SUBJECT:<br><br>MEDICAL MALPRACTICE, DAMAGES<br><br>PLAINTIFF REQUESTS JURY TRIAL |

## COMPLAINT

TO THE HONORABLE COURT:

**COMES NOW**, plaintiff Daniel J. Kopel Ballester, through the undersigned attorney, and respectfully SETS FORTH and PRAYS:

### JURISDICTION OF THE COURT

1.  This is an action for medical malpractice and damages. The jurisdiction of this Honorable Court is predicated on the diversity of citizenship of the parties under the provisions of 28 U.S.C. §1332 insofar plaintiff is a citizen of the state of New York, and the individual defendants DR. PEDRO J. COLON HERNANDEZ, his wife JANE DOE and the CONJUGAL PARTNERSHIP constituted between them; DR. ELIZARDO MATOS CRUZ, his wife JANE rOE and the CONJUGAL PARTNERSHIP constituted between them; HOSPITAL GENERAL MENONITA, INC. d/b/a HOSPITAL MENONITA DE CAYEY; PUERTO RICO MEDICAL DEFENSE INSURANCE COMPANY; XYZ INSURANCE COMPANIES; JOHN DOE AND

RICHARD ROE; XYZ ENTITIES; XYZ COMPANIES are citizens of the Commonwealth of Puerto Rico, and/or states other than New York, and/or corporations and/or other entities organized and existing under the laws of the Commonwealth of Puerto Rico, and/or states other than New York, with their principal place of business in the Commonwealth of Puerto Rico, and/or states other than New York.   The plaintiff therefore requests jury trial.

2.     Venue is proper as the acts giving rise to this action occurred in the Commonwealth of Puerto Rico, and defendants do business in Puerto Rico.

3.     Plaintiff tolled the statute of limitations of this action through an extrajudicial claim letter.

## THE PARTIES

4.     The allegations contained in paragraphs 1 through 3 of the Complaint are incorporated herein as if fully set forth at length herein.

5.     Plaintiff Daniel J. Kopel Ballester is of legal age, single, resident of the state of New York and son of the deceased Israel Kopel Amster (hereinafter, "Kopel").

6.     At all times material hereto, defendant Dr. Pedro J. Colón Hernández (hereinafter "Dr. Colón") was, and still is, a physician specialized in interventional cardiology, duly authorized to practice medicine in the Commonwealth of Puerto Rico.

7.     At all times material hereto, defendant Dr. Colón had and still has a conjugal partnership constituted with his wife Jane Doe, whose true identity is unknown at this time.

8.     At all times material hereto, defendant Dr. Elizardo Matos Cruz (hereinafter, "Dr. Matos") was, and still is, a physician specialized in cardiovascular surgery, duly authorized to practice medicine in the Commonwealth of Puerto Rico.

9.     At all times material hereto, defendant Dr. Matos had and still has a conjugal partnership constituted with his wife Jane Roe, whose true identity is unknown at this time.

10. At all times material hereto, defendant Hospital General Menonita, Inc. d/b/a Hospital Menonita de Cayey (hereinafter, "the Hospital") was, and still is, a medical institution duly organized and existing under the laws of the Commonwealth of Puerto Rico

11. At all times material hereto, defendant Puerto Rico Medical Defense Insurance Company (PRMDIC) was and still is a company or entity engaged in the insurance business, who had issued one or more insurance policies to some or all of the defendants in this case providing coverage for facts such as the ones alleged in this Complaint, and which were in full force and effect.

12. At all times material hereto, defendants XYZ Insurance Companies are one or more insurance companies or entities engaged in the insurance business, who had issued one or more insurance policies to some or all of the defendants in this case providing coverage for facts such as the ones alleged in this Complaint, whose true identities are unknown at this time.

13. John Doe and Richard Roe are the fictitious names of any and all persons who may be responsible to the plaintiff for the facts alleged in this Complaint, whose true identities are unknown at this time.

14. XYZ ENTITIES are the fictitious names of any and all partnerships and/or entities of any kind that may be responsible to the plaintiff for the facts alleged in this Complaint, whose true identities are unknown at this time.

15. XYZ COMPANIES are the fictitious names of any and all legal entities that may be responsible to the plaintiff for the facts alleged in this Complaint, whose true identities are unknown at this time.

16. PRMDIC and XYZ INSURANCE COMPANIES are directly and jointly liable to the plaintiff under the provisions of the Puerto Rico Insurance Code for the performance and satisfaction of the relief hereinafter sought.

17. The spouses and the conjugal partnerships of the physicians sued, are jointly liable to the plaintiff for the facts alleged in this Complaint, as they received benefits of the negligent acts and/or omissions of such defendants.

18. Upon information and belief, on or before March 30, 2021, Dr. Colón had been sued for medical malpractice.

19. Upon information and belief, on or before March 30, 2021, Dr. Matos had been sued for medical malpractice.

20. Upon information and belief, on or before March 30, 2021, the Hospital had been sued for medical malpractice.

21. Upon information and belief, on or before March 30, 2021, the Hospital knew that Dr. Colón had been sued for medical malpractice.

22. Upon information and belief, on or before March 30, 2021, the Hospital knew that Dr. Matos had been sued for medical malpractice.

**FACTS**

23. The allegations contained in paragraphs 1 through 22 of the Complaint are incorporated herein as if fully set forth at length herein.

24. On or around November 2020, Kopel, who was 72 years old at that time, was referred by his cardiologist, Dr. José Martínez Toro, to the offices of defendant Dr. Colón, interventional cardiologist, for a surgical evaluation as a result of certain cardiac findings in Kopel's visit to Dr. Martinez's office.

25. Once he visited Dr. Colón's office, defendant Dr. Colón recommended Kopel to undergo a Transcatheter Aortic Valve Replacement (TAVR) and a Transesophageal Echocardiogram (TEE).

26. Both procedures were coordinated for March 30, 2021.

27. The TAVR is a procedure not indicated to be performed on a patient with Kopel's clinical history.

28. However, on March 30, 2021, Kopel was admitted to the Hospital to undergo a TAVR and a TEE.

29. Kopel underwent both procedures on the same date, March 30, 2021.

30. Defendants Dr. Colón, as principal surgeon, and Dr. Matos, as second surgeon, were the surgeons who performed the TAVR.

31. According to the operation report, during the procedure there were no apparent complications.

32. However, the TAVR was inadequately performed.

33. Kopel's family members were informed by an operation room assistant that the procedure went well.

34. After the surgical procedures were ended, Kopel was transferred to the recovery room, where he was later transferred to the intensive care unit for postoperative management. At that moment, the patient was stable.

35. Once in the intensive care unit, Kopel's health started to deteriorate, and he began showing signs of cardiogenic shock, among others.

36. When Kopel's family members began to ask about his health condition, defendant Dr. Colón informed them that the patient's condition was normal within the type of procedure that he had to undergo and that he would soon begin to improve.

37. However, Kopel's health condition continued to deteriorate and on April 1, 2021, defendant Dr. Matos had to perform surgery on Kopel to place an intra-aortic balloon pump on the patient.

38. On that date, it was documented that the patient was suffering from cardiogenic shock, severe pulmonary hypertension and severe hypotension, among other diagnoses.

39. On that date, the patient had to be intubated and was suffering from multisystemic organ failure.

40. On April 2, 2021, it was documented that Kopel's prognosis was very poor. Later on that date, Kopel was diagnosed with a cardiorespiratory arrest and was pronounced dead.

## NEGLIGENCE

41. The allegations contained in paragraphs 1 through 40 of the Complaint are incorporated herein as if fully set forth at length herein.

42. The defendants Dr. Colón and Dr. Matos, incurred in negligence and medical malpractice by not providing adequate medical care to the patient, by not identifying, managing and/or treating the condition that he presented, by not giving him the attention that his condition required, by performing a TAVR on the patient even when said procedure was not indicated for him, by not performing the TAVR procedure adequately and with the required expertise, by not performing the necessary procedures and studies to adequately care for the patient's condition, by not considering the patient's clinical findings for subsequent treatment, and by failing to provide Kopel with appropriate medical care, as required by the generally known standards of the medical profession, among other negligent and/or tortious actions and/or omissions.

43. The defendants Dr. Colón and Dr. Matos were also negligent when they inadequately and deficiently performed the TAVR procedure on the patient, when they executed said procedure with lack of expertise, when they worsened the patient's cardiac condition and caused him to decompensate by performing the TAVR on him, and when they neglected the patient's health before, during, and after surgery, among other negligent and/or tortious actions and/or omissions.

44. The defendant Dr. Colón also incurred in negligence by failing to obtain an informed consent from the patient, by making a deficient and inadequate preoperative evaluation, by recommending the patient the performance of the TAVR despite Mr. Kopel's clinical history and cardiac conditions and by failing to select the correct and appropriate surgical procedure for Kopel, among other negligent and/or tortious actions and/or omissions.

45. The Hospital incurred in negligence and medical malpractice, among others, due to the negligent and/or omissions of its employees, physicians, nursing staff and/or agents during the treatment provided to Mr. Kopel at the Hospital. The hospital through its employees, physicians, nursing staff and/or agents failed to ensure the health and safety of Mr. Kopel, by: (1) not making a cautious selection of the personnel that works there and granting privileges and/or hiring the defendant physicians to practice/or work in the institution; (2) not keeping a full, unaltered, and concise medical record; (3) not having and/or keeping the correct, necessary and complete medical equipment and/or medications to adequately care for the patient's condition; (4) failing to adequately and promptly treat the patient's condition once it happened (5) failing to comply with their duties to monitor, supervise, and care for the patient, (6) by failing to establish the necessary protocols to ensure the well-being of the patient and/or by not having complied with their established protocols, and (7) by failing to provide adequate medical treatment and attention to the patient, and failing to give the patient the appropriate medical care according to the prevailing standard of care, among other negligent and/or tortious actions and/or ommissions.

46. The Hospital also incurred in negligence and medical malpractice, among others, by granting privileges and/or hiring the defendant physicians to practice/or work in the institution; failing to require the personnel to take professional improvement training and to adequately supervise personnel by not keeping up of the work of said personnel; failing to

intervene in an obvious act of medical malpractice and falling short on updates related to current technological developments to properly care for the patient's condition.

47. The medical and hospital personnel who treated Mr. Kopel at the hospital were negligent and incurred in medical and hospital malpractice by failing to provide said patient with appropriate medical care as required by the generally accepted standards of care of the medical profession.

48. All defendants incurred in negligent acts and/or omissions that fall under medical malpractice, which were committed individually and/or jointly by each of them, when they failed to provide the patient with the appropriate medical care according to the prevailing standard of care.

49. As a direct result of the negligent actions and/or omissions of the defendants, Kopel died without being provided the attention and/or medical care necessary to treat his condition.

**DAMAGES**

50. The allegations contained in paragraphs 1 through 49 of the Complaint are incorporated herein as if fully set forth at length herein.

51. As a result of the defendants' negligent actions and/or omissions, plaintiff Daniel J. Kopel Ballester, has suffered and is still suffering intense mental anguishes due to his father's demise. He has suffered and is still suffering by thinking in the suffering and intense pain that his father experienced before his death.  He has also suffered and is still suffering for being deprived of his love, care, company, and protection, among others.  His ability to enjoy life has also been significantly diminished.  These damages are currently estimated in an amount no less than one million dollars ($1,000,000.00).

52. Plaintiff's damages were due, only and exclusively, to the negligence and medical malpractice of each and every one of the defendants, who failed to comply with medical treatment standards applicable to situations such as the one that occurred in this case, among other negligent and/or tortious acts and/or omissions, for which they are directly and jointly liable.

**WHEREFORE**, it is respectfully requested from the Honorable Court that judgment be entered in favor of plaintiff, and against the defendants, jointly and severally, in the amounts set forth in the Complaint, plus the costs of this action, a reasonable amount of attorney's fees, and such other relief as this Honorable Court deems proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 24th day of March, 2023.

*Alicia M. Santos Irizarry Law Office*
802 Ave. San Patricio
Urb. Las Lomas
San Juan, Puerto Rico 00921
Tel. 787-963-0548 / Fax 787-963-0549
Email: *asantos@amsi-law.com*

S/Alicia M. Santos Irizarry
Alicia M. Santos Irizarry
USDC No. 222106